UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARTIN CISNEROS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 3:13-0061 |
| ) | Judge Trauger/Bryant |
| METRO TRANSIT AUTHORITY (MTA), ) | **Jury Demand** |
| *et al.*, ) | |
| ) | |
| Defendants ) | |

**TO: THE HONORABLE ALETA A. TRAUGER**

## REPORT AND RECOMMENDATION

Defendants have filed their motion for summary judgment (Docket Entry No. 44). Plaintiff Cisneros has responded in opposition (Docket Entry Nos. 72, 75, 76, 77, 78, 79, and 100). Defendants have filed a reply (Docket Entry No. 85) and Plaintiff has filed two surreplies (Docket Entry No. 88 and 90).

For the reasons stated below, the undersigned Magistrate Judge recommends that Defendants' motion for summary judgment (Docket Entry No. 44) be **GRANTED**.

### STATEMENT OF THE CASE

Plaintiff Martin Cisneros, who is proceeding *pro se and in forma pauperis*, has filed his complaint pursuant to the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. ("ADA"), and civil rights statutes, presumably 42 U.S.C. § 1983, against the Metropolitan Transit Authority ("MTA") of Nashville, Tennessee, and an unnamed bus driver and supervisor (Docket Entry No. 1). Cisneros alleges that Defendants violated the ADA and his civil rights by wrongfully denying him the use of a handicap ramp on a city bus on October 24, 2012. Defendants have filed an answer

denying liability and asserting affirmative defenses (Docket Entry No. 8).

Defendants thereafter filed their motion for summary judgment.

**STANDARD OF REVIEW**

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at

248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**SUMMARY OF PERTINENT FACTS**

A few minutes after noon on October 24, 2012, Plaintiff Cisneros was waiting for the bus at the Nashville General Hospital stop at 1818 Albion Street in Nashville, Tennessee. When the 25 Hart bus, operated by Defendant MTA and driven by James Otey, arrived, Cisneros, who was using a cane, requested that Otey extend the bus's handicap lift. Otey responded that the lift was not working, and that Cisneros would either have to board the bus by the stairs or wait for the next bus. Cisneros chose not to wait but instead "crawled" up the three steps onto the bus being driven by Otey.

A heated verbal altercation broke out between passenger Cisneros and driver Otey, the particulars of which are disputed by the parties. Otey claims that Cisneros became very angry because the handicap lift had not been deployed, and that Cisneros called Otey numerous names including a racial slur. Cisneros asserts that Otey is to blame for the argument, and that Otey at one point threatened to "punch the beard off of (Cisneros)."

The bus proceeded to the next stop, Music City Central, where driver Otey disembarked and located a metropolitan policeman to enter the bus to speak with Cisneros. While the bus was stopped at the Music City Center, Vicky Nelson, another MTA bus driver who had just finished her shift, attempted to get the handicap lift on

3

Otey's bus to work without success (Docket Entry No. 48). Thereafter, David Lowe, an MTA mechanic who is now deceased, arrived and was able to make the handicap lift on Otey's bus work (Docket Entry No. 48 at 3 and Docket Entry 47 at 4). As soon as the handicap lift was operative, Cisneros disembarked the bus using the lift.

Shortly thereafter, Fredericka Wells, an MTA supervisor at the Music City Center stop, was notified that a passenger had asked to speak to a supervisor. She found Cisneros in the company of the police officer. Wells asserts that she listened to Cisneros, but when he attempted to address his complaint he "became angry and verbally abusive towards myself and the police officer." Cisneros disputes this account, and claims that Wells was disrespectful to him. In any event, the parties agree that Wells requested that the police officer escort Cisneros off of MTA property (Docket Entry No. 49).

**ANALYSIS**

The American With Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participating in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services

4

or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). This statute further makes it an act of discrimination for a public entity operating a fixed route public transportation system to purchase a bus that is not readily accessible to and useable by individuals with disabilities. 42 U.S.C. § 12142.

In support of their motion, Defendants make essentially three arguments. First, Defendants maintain that the mechanical malfunction of the handicap lift, under the circumstances of this case, does not violate the ADA as a matter of law. Next, Defendants argue that Cisneros was not sufficiently disabled to make him a "qualified individual with a disability" who required the use of a handicap lift. Finally, Defendants argue that the statutory scheme of the ADA imposes liability only upon employers, and that the individual Defendants, driver Otey and supervisor Wells, are entitled to be dismissed as a matter of law.

According to the undisputed evidence in the case, driver Otey checked the handicap lift before beginning his shift on the morning of October 24, 2012, and found that the lift functioned properly. He had deployed the lift earlier that morning at a stop at Vanderbilt Hospital, and the lift on that occasion operated normally (Docket Entry No. 47 at 2). However, at a later stop at Centennial Hospital, shortly before his encounter with Cisneros, Otey attempted to extend the lift for a passenger but the lift failed to extend properly from the bus. Otey decided to have the handicap lift examined by an MTA mechanic when it arrived at the

Music City Central depot in downtown Nashville at the end of the route.

Upon arriving at the Nashville General Hospital stop and being requested by Cisneros to extend the handicap lift, Otey "flipped the switch several times to put out the wheelchair lift and it would not come out" (Docket Entry No. 47 at 2-3).

Regulations issued under the ADA require that entities providing public transportation services shall maintain in operative condition features of vehicles that are required to make the vehicles readily accessible to and useable by individuals with disabilities, including handicap lifts. 49 C.F.R. § 37.161(a). These regulations further require that accessibility features be repaired promptly if they are damaged or out of order, and that the entity shall take reasonable steps to accommodate individuals with disabilities who would otherwise use the feature. 49 C.F.R. § 37.161(b). Nevertheless, these regulations "[do] not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs." 49 C.F.R. § 37.161(c). Regulations further permit a public entity to keep a vehicle with an inoperable lift in service for up to three days from the day on which the lift is discovered to be inoperative if there is no spare vehicle available to take the place of the vehicle with an inoperable lift. Finally, regulations require that in any case in which a vehicle is operating on a fixed route with an inoperative lift, and the headway to the next accessible vehicle on the route exceeds 30 minutes, the entity shall promptly provide alternative transportation to individuals with disabilities who are unable to

6

use the vehicle because its lift does not work. 42 U.S.C. § 37.163(f).

From the undisputed proof in this case, the undersigned Magistrate Judge finds that failure to deploy the handicap lift for Cisneros on October 24, 2012, was due to the inoperability of the lift and, under such circumstances, does not constitute a violation of the ADA. According to the affidavit testimony of driver Otey, the handicap lift operated properly during his pre-trip inspection on October 24, and once again on the first occasion of its use at the Vanderbilt Hospital stop. However, it failed to extend properly when Otey attempted to operate the lift at the Centennial Hospital stop and again when he attempted to extend the lift for Cisneros (Docket Entry No. 47). Upon arrival of the bus at the Music City Center stop, driver Vicki Nelson also attempted unsuccessfully to get the lift to operate properly. It is undisputed that David Lowe, an MTA mechanic, came to the bus and was able successfully to restore the proper operation of the lift. Cisneros, in his responses, argues that there was never anything wrong with the lift at all, and that Otey merely did not want to take the time to extend the lift. However, this argument is based entirely upon speculation and is wholly unsupported by the evidence.

The undersigned further finds the availability of another bus at the Nashville General Hospital stop well within 30 minutes satisfies MTA's duty to provide alternative transportation to disabled individuals after the handicap lift on Otey's bus became inoperative. 49 C.F.R. § 37.163(f). Specifically, the record shows that another bus, the 19 Herman bus, was due at the Nashville

7

General Hospital stop at 12:30 p.m. (Docket Entry No. 52-6), and it appears from the record that this later bus in fact arrived at the Nashville General Hospital stop while Otey's bus was still there. This would have allowed Cisneros to use the handicap lift on the following bus had he chosen to do so (Docket Entry No. 47 at 3-4).

In summary, the undersigned Magistrate Judge finds that the regulations under the ADA do not require perfect service for disabled bus riders, and that occasional problems, without more, do not constitute a violation of the ADA. *Midgett v. Tri-County Metropolitan Transportation District*, 254 F.3d 846, 849-51 (9th Cir. 2001). For this reason, the undersigned Magistrate Judge finds that Defendants' motion for summary judgment regarding Cisneros's ADA claims for the events of October 24, 2012, must be GRANTED and those claims dismissed.[1]

With respect to the additional grounds raised by Defendants, the undersigned finds that there is a genuine dispute of material fact regarding whether Cisneros was a qualified individual with a disability as defined by the ADA. Defendants have

---

[1] After Defendants filed their present motion for summary judgment, the undersigned granted Plaintiff's motion for leave to supplement his complaint to include claims arising from an incident that allegedly occurred on February 14, 2013 (Docket Entry Nos. 25 at 3-7 and 58).
　　Unbeknown to the undersigned Magistrate Judge at the time Plaintiff's motion to supplement his complaint was granted, Plaintiff had earlier filed a separate action based upon the events of February 14, 2013 (Case No. 3:13-0491). This action was dismissed on May 24, 2013, for failure to state a claim and a subsequent appeal was voluntarily dismissed by Plaintiff. Thus, it appears that Plaintiff's motion for leave to supplement his complaint in the present case may have been improvidently granted.
　　By separate order, Plaintiff will be directed to show cause why his claims based upon the events of February 14, 2013, are not barred by *res judicata*.

filed certain videotaped evidence that purports to show Cisneros on other occasions climbing steps without apparent difficulty. Defendants argue that Cisneros did not really require the handicap lift to board the bus on October 24, and that he only crawled up into the bus in order to build a claim for this lawsuit.[2] In response, Cisneros has gone to considerable length in the record to establish that he is disabled, both visually and otherwise. The undersigned therefore finds that a genuine dispute exists as to the nature and extent of Cisneros's disability, and if Defendants' motion were based upon that ground alone, Defendants' motion would be DENIED.

Driver Otey and supervisor Wells are not identified other than by title in the complaint, and Plaintiff's motion to amend his complaint to name Otey as an individual defendant was denied on grounds of futility (Docket Entry No. 58). ADA claims against individual employees are dismissed as a matter of law because there is no individual liability under Subchapter II of the ADA. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002); *Sagan v. Sumner County Bd. of Educ.*, 726 F. Supp. 2d 868, 875 (M.D. Tenn. 2010). For this reason, Otey and Wells are not before the court as individual employee defendants, nor should they be, as a matter of law.

Finally, Cisneros's civil rights claims must be DISMISSED as well. Although Cisneros cites no specific authority, the undersigned finds it likely that he intended to assert his civil

---

[2]Cisneros has filed multiple actions against MTA in this court.

rights claim pursuant to 42 U.S.C. § 1983. The doctrine of *respondeat superior* does not apply in actions brought under § 1983. As a result, a municipal agency may only be held liable for the injuries directly attributable to its actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipal agency may be held liable under § 1983 if its policy or well-settled custom causes an injury. *Monell*, 436 U.S. at 694. In order to obtain damages from a municipal agency, a plaintiff must prove that municipal policy makers established or maintained a policy or custom which caused a municipal employee to violate the plaintiff's constitutional or statutory rights. *Id*. Furthermore, the policy must also be shown to exhibit deliberate indifference to the rights of those the policy affects. *Id*. In the absence of evidence affecting the policy, the plaintiff must articulate a factual basis demonstrating considerably more proof than a single incident to support his claim. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

The evidence in this case shows that MTA policy requires that when a passenger using a cane requests a handicap lift, that request is to be granted and the handicap lift deployed by the bus driver (Docket Entry No. 52 at 6 and 52-4).

In view of this undisputed evidence, the undersigned Magistrate Judge finds that Plaintiff Cisneros has failed to present any evidence of an MTA policy that is deliberately indifferent to his rights under the ADA. For this reason, the undersigned Magistrate Judge finds that Defendants' motion for summary judgment with respect to civil rights violations should be GRANTED and such claims dismissed with prejudice.

**RECOMMENDATION**

For the reasons stated above, the undersigned Magistrate Judge finds that Defendants' motion for summary judgment with respect to all claims arising from events of October 24, 2012, should be GRANTED and that all such claims be DISMISSED with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 3rd day of February, 2014.

/s/John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge